UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

**Karyn Beth Spielberg**

  **v.**           Case No. 10-cv-463-PB
                Opinion No. 2011 DNH 171
**Michael J. Astrue, Commissioner,**
**Social Security Administration**

## MEMORANDUM AND ORDER

Karyn Beth Spielberg filed a complaint seeking review, pursuant to 28 U.S.C. § 405(g), of the Commissioner's decision denying her application for disability insurance and supplemental security income benefits. Spielberg contends that the Administrative Law Judge ("ALJ") erred at Step Two of the sequential analysis and that the ALJ erred in assigning the most weight to the opinion of the state agency reviewing physician. The Commissioner moves to affirm the decision.

### I. BACKGROUND[1]

Spielberg applied for Social Security benefits on April 9, 2008, when she was fifty years old. She alleged an onset of

---

[1] The background information is taken from the parties' Joint Statement of Material Facts and the administrative record. See LR 9.1(b). I note that the information in the Joint Statement is not presented in chronological order or any other particular order, which has required additional time in preparing this order.

disability as of July 2, 2006, due to the effects of a stroke she suffered in 1993, fibromyalgia, lupus, and depression.  She is a high school graduate.  She worked in the past as a restaurant hostess, a skin care technician, a secretary and receptionist at law firms, and a sales clerk.

**A.   Medical History**

Spielberg suffered a stroke in 1993 and was treated at the New Hampshire Rehabilitation Hospital.  Following treatment, Spielberg returned to her work as a legal secretary.

In March 2007, Spielberg injured her back while moving furniture at her mother's house.  An MRI revealed a mild compression fracture in the thoracic region of the spine.  In May 2008, Spielberg went to the emergency room at Catholic Medical Center because of body aches, primarily in her foot, wrist, and upper back.  X-rays showed unremarkable results.

Dr. Bundschuh of Goffstown Primary Care began treating Spielberg as her primary care physician in October 2008.  Dr. Bundschuh noted Spielberg's report of chronic pain and thought it might be caused by fibromyalgia.  Dr. Bundschuh also noted Spielberg's report of short-term memory loss and indicated it might be due to depression, but later she attributed it to the effects of the stroke.  Dr. Bundschuh referred Spielberg to a rheumatologist.

In January 2009, Dr. Bundschuh provided a report of treatment and diagnoses for Spielberg. Dr. Bundschuh wrote that because of her short-term memory loss, Spielberg had to be systematic about everything, including making lists to complete tasks. Dr. Bundschuh said that distractions were a problem and that the effort Spielberg expended in maintaining her activities caused severe exhaustion, requiring daily naps. Dr. Bundschuh noted that Spielberg had been diagnosed with autoimmune lupus in 1980. She also noted current symptoms, including exhaustion, joint pain, migraine headaches, and intermittent depression.

Dr. Douglas R. Marks, a rheumatologist, examined Spielberg in March 2009, ordered testing that was done in April, and examined Spielberg again on May 20, 2009. Dr. Marks found that Spielberg's symptoms were most consistent with fibromyalgia. Dr. Marks recommended that Spielberg increase her exercise to walking slowly for one hour each day. He also recommended Aleve. Dr. Marks completed a residual functional capacity questionnaire on June 1, 2009, in which he stated that Spielberg met the criteria for fibromyalgia, indicated a question as to whether Spielberg has "lupus asplenia," and noted her stroke, severe depression, and nephrolithiasis. He stated that Spielberg was not a malingerer, but that her symptoms were aggravated by emotional factors. He listed Spielberg's pain as bilateral and stated that

she had diffuse myofascial pain and right hand and wrist pain.

Dr. Marks determined that Spielberg's symptoms were severe enough to interfere with her attention and concentration, and that she had a marked limitation in her ability to deal with work-related stress.  With respect to her physical limitations, Dr. Mark stated that Spielberg could walk one or two city blocks at a time, could sit for fifteen minutes and stand for twenty minutes at a time, and could sit, stand, or walk for two hours in an eight-hour work day.  Spielberg would need to be able to shift between sitting, standing, and walking and might need unscheduled breaks every one to two hours.  She could only occasionally lift ten pounds and never lift twenty pounds.  She was limited in repetitive reaching, handling, and fingering because of impairment in her hands and limited in postural activities.  Dr. Marks stated that Spielberg would be absent from work because of her impairments more than three times each month.

Spielberg had a hysterectomy on July 1, 2009.  On follow up in September, Dr. Bundschuh wrote that Spielberg was feeling much better as a result of the surgery and was dealing better with pain.  Spielberg then was considering working part-time despite her memory issues.

Spielberg was diagnosed with osteoporosis in February 2010.  On March 1, 2010, Spielberg had a follow-up appointment with Dr.

Bundschuh. Dr. Bundschuh noted that Spielberg had no new issues and was in no acute distress. At Spielberg's request, Dr. Bundschuh drafted a letter "To Whom It May Concern," in which she listed Spielberg's current issues as osteoporosis, back pain from a 2007 injury, glaucoma, nephrolithiasis, fibromyalgia, asplenia, and memory loss since her stroke. Dr. Bundschuh stated that Spielberg was unable to work eight hours a day or forty hours a week.

**B.      Evaluations by State Agency Consultants**

The Social Security Administration sent Spielberg to a consultative examination with a psychologist, Darlene Gustavson, Psy.D., which was completed on July 14, 2008. A brief mental status examination provided a score of twenty-nine out of thirty points. Dr. Gustavson found that Spielberg was oriented and was able to complete the tasks provided in the test. Dr. Gustavson stated that Spielberg was able to understand and remember instructions, to interact appropriately with others including fellow employees, to sustain attention and to complete at least simple tasks, and to tolerate common work stresses. Dr. Gustavson diagnosed major depressive disorder, which was recurrent and mild, and recommended mental health treatment. Dr. Gustavson also noted that Spielberg was able to participate in the sixty-minute evaluation without complaint.

On August 14, 2008, a state agency psychologist, Dr. Phillips, reviewed Spielberg's records and completed a psychiatric review technique form and a mental residual functional capacity assessment form.  Dr. Phillips noted that Dr. Gustavson's report was the only mental evidence in the record.  Dr. Phillips found that Spielberg had moderate limitations in the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and work week, the ability to perform at a consistent pace without an unreasonable number of rest periods, and the ability to interact appropriately with the public and to respond appropriately to changes in the work setting.

Dr. William Windler did a consultative examination of Spielberg for the Social Security Administration on September 12, 2008.  Dr. Windler wrote that Spielberg had had a stroke in 1993, which caused temporary weakness on her right side and problems with concentration, focus, and memory.  Spielberg also told Dr. Windler that she had been diagnosed with lupus in 1982, which caused fatigue and lack of energy that was worsened by the stroke.  She reported back pain, right ankle pain, pain in her left hand and wrist, and a limited tolerance for sitting, standing, walking, and postural activities.

On physical examination, Dr. Windler found no acute distress and normal gait, standing, mood, affect, and thinking.  Palpation revealed tenderness in several areas of the back and left knee.  Dr. Windler concluded that Spielberg's lupus was manifesting in numerous painful areas and that her stroke had apparently left cognitive difficulties.

Dr. Jonathan Jaffe, another state agency physician, reviewed Spielberg's records and completed a physical functional capacity assessment on September 17, 2008.  Dr. Jaffe noted the lack of a statement from a treating source about Spielberg's physical capabilities.  He concluded that Spielberg could occasionally lift twenty pounds, frequently lift ten pounds, and could sit, stand, and walk for approximately six hours in an eight hour day.

**C.   Administrative Proceedings**

Spielberg's claims for Social Security benefits were denied on September 19, 2008.  She requested a hearing, which was held on March 12, 2010.  Spielberg attended the hearing, represented by counsel, and testified.  A vocational expert also testified.

The ALJ issued a decision denying Spielberg's claims on May 15, 2010.  The ALJ found that Spielberg had severe impairments due to mild degenerative disc disease and depression.  The ALJ also found that Spielberg retained the residual functional capacity to do light work with certain limitations in dealing

with complex tasks and dealing with the public.  Based on those findings and the vocational expert's opinions, the ALJ concluded that jobs existed that Spielberg could do.  Therefore, she was not disabled for purposes of her Social Security application.

The Decision Review Board reviewed the decision, corrected a "scrivener's error," deleted the semi-skilled jobs that the ALJ had included in the Step Five findings, and refuted Spielberg's contention that the consultative opinions were not entitled to weight because they did not consider subsequent medical records.  The ALJ's decision, as modified by the Decision Review Board, became the final decision of the Commissioner.  Spielberg then filed this action to challenge the Commissioner's decision.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  Review is limited to determining whether the ALJ used "the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

The findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion."  Id. at 770.

Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record.  Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606,

608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### III.  ANALYSIS

Spielberg contends that the Commissioner's decision must be reversed because the ALJ failed to find at Step Two that she had a severe impairment due to fibromyalgia and erroneously relied on the opinion of a state agency consultative physician to determine Spielberg's residual functional capacity.  The Commissioner moves to affirm the decision because any error at Step Two is harmless and because the ALJ properly assessed the medical opinion evidence.

**A.   Step Two Findings**

At Step Two of the sequential analysis, an applicant for Social Security benefits must show "that [s]he has a medically severe impairment or combination of impairments . . . ."  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  The requirement of a medically severe impairment or combination of impairments is met unless the record shows "only a slight abnormality or combination of slight abnormalities which would have no more than a minimal

10

effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986) (internal quotation marks omitted).  The purpose of Step Two is "to do no more than screen out groundless claims." Id.

The Step Two findings are then reviewed at Step Three to determine whether the applicant's severe impairment or impairments meet or equal an impairment listed in the Social Security regulations.  20 C.F.R. § 404.1520(d);[2] Barnhart v. Thomas, 540 U.S. 20, 25 (2003).  If the impairments do not meet or equal a listed impairment, the ALJ proceeds to Step Four to determine whether the applicant can do her previous work, and if not, the ALJ continues to Step Five to determine whether the applicant can do other jobs that exist in sufficient numbers in the national economy.  § 404.1520(e); Thomas, 540 U.S. at 25.

In this case, the ALJ found that Spielberg had severe impairments due to degenerative disc disease and depression.  The ALJ disputed Dr. Marks's diagnosis of fibromyalgia and concluded

---

[2] For purposes of this case, the regulations governing disability insurance benefits, set forth in Part 404, are the same as the regulations governing supplemental security income, set forth in Part 416.  See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).  To avoid needless repetition, I will cite only the Part 404 regulations.

that the record did not show that the condition caused any significant limitations.  As a result, the ALJ did not include fibromyalgia as a severe impairment.

Even if the ALJ erred by omitting fibromyalgia as a severe impairment at Step Two, the error does not require reversal as long as it did not prejudice the outcome.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).  At Step Four of the sequential analysis, the ALJ "will assess and make a finding about [the applicant's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  The residual functional capacity assessment is then used at Steps Four and Five to determine whether there is work the applicant can do.  Id.  An applicant's residual functional capacity "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In making that assessment, the ALJ "will consider all of [the applicant's] medically determinable impairments of which [the ALJ is] aware, including [the applicant's] medically determinable impairments that are not 'severe,' as explained in [sections] 404.1520(c), 404.1521, and 404.1523 . . . ."  § 404.1545(a)(2).

Therefore, if the ALJ found any severe impairment at Step Two, continued through the sequential analysis, and properly

evaluated all impairments for purposes of the disability determination, the decision will not be reversed.  See, e.g., Delia v. Comm'r of Soc. Sec., No. 10-15092, 2011 WL 2748622, at *1 (11th Cir. July 14, 2011); Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

**B.   Medical Opinions**

In finding that Spielberg retained the residual functional capacity to do light work with certain limitations for simple tasks and dealing with the public, the ALJ credited the opinions of state agency consultative physicians, Dr. Jaffe and Dr. Phillips.  The ALJ gave little weight to the opinions of Spielberg's treating physicians, Dr. Marks and Dr. Bundschuh, concluding that their opinions ascribing significant limitations to Spielberg's abilities were not supported by their notes or the medical records.  The Decision Review Board supported the ALJ's decision to rely on Dr. Jaffe's opinion, despite the more recent medical records from Dr. Marks and Dr. Bundschuh, on the ground that the additional records did not support Spielberg's claimed impairments.

The ALJ is required to attribute weight to a medical opinion based on the nature of the relationship between the medical provider and the claimant.  20 C.F.R. § 404.1527(d).  An opinion

based on one or more examinations is entitled to more weight than a non-examining source's opinion, and a treating source's opinion, which is properly supported, is entitled to more weight than other opinions.  Id.  A treating source's opinion on the nature and severity of the claimant's impairments will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  § 404.1527(d)(2).  "If any of the evidence in [the claimant's] case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [the ALJ] will weigh all of the evidence and see whether [she] can decide whether [the claimant is] disabled based on the evidence [the ALJ has]."  § 404.1527(c)(2).

   Spielberg contends that the ALJ did not properly explain the decision to give little weight to the opinions of Dr. Marks and Dr. Bundschuh.  She challenges the ALJ's reliance on Dr. Jaffe's opinion because Dr. Jaffe did not have the benefit of the information from Dr. Marks's records and Dr. Bundschuh's later records, and because the ALJ provided no analysis of Dr. Jaffe's opinion to support the weight given that opinion.  She also notes that Dr. Jaffe commented about the lack of a statement from a treating source on Spielberg's physical capacities, which was

provided in the later records.

### 1. **Dr. Jaffe's Opinion**

Dr. Jaffe served as a state agency consultative physician and did not examine Spielberg. His opinion is based entirely on his review of Spielberg's medical records that existed before he provided his opinion on September 17, 2008. As a result, Dr. Jaffe did not consider Dr. Marks's records or Dr. Bundschuh's records that were generated after he provided his opinion.

Social Security Ruling 96-6p provides that state agency consultants' opinions

> can be given weight only insofar as they are supported
> by evidence in the case record, considering such
> factors as the supportability of the opinion in the
> evidence including any evidence received at the
> administrative law judge and Appeals Council levels
> that was not before the State agency, the consistency
> of the opinion with the record as a whole, including
> other medical opinions, and any explanation for the
> opinion provided by the . . . consultant.

SSR 96-6p, 1996 WL 374180, at *2. "[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (internal quotation marks and citations omitted). A state agency consultant's opinion that is based on an incomplete record, when later evidence supports the claimant's limitations, cannot

15

provide substantial evidence to support the ALJ's decision to deny benefits. See, e.g., Padilla v. Barnhart, 186 Fed. Appx. 19, 20 (1st Cir. 2006); Russell v. Astrue, 742 F. Supp. 2d 1355, 1378-79 (N.D. Ga. 2010); L.B.M. ex rel. Motley v. Astrue, No. 1:08-cv-1354-WTL-DML, 2010 WL 1190326, at *13 (S.D. Ind. Mar. 23, 2010).

In this case, Dr. Jaffe did not have any information pertaining to Spielberg's fibromyalgia diagnosis or her treating physicians' opinions about her limitations. The ALJ explained that he gave significant weight to Dr. Jaffe's opinion only because he was an agency physician who was familiar with the Social Security Administration's definitions and procedures. The Decision Review Board added its view that the additional records added nothing significant. Notably, the Decision Review Board overlooked Dr. Marks's records and opinion and provided only a one-sided summary of Dr. Bundschuh's records.

### 2.  **Dr. Marks's and Dr. Bundschuh's Records and Opinions**

Dr. Bundschuh began treating Spielberg as her primary care physician in October of 2008. Dr. Marks, a rheumatologist, saw Spielberg on a first visit in March of 2009. He then ordered laboratory tests which were done in April and had a follow-up meeting with Spielberg in May of 2009. Both Dr. Bundschuh and Dr. Marks provided opinions that Spielberg was limited by pain

and fatigue caused by fibromyalgia, along with other impairments. Dr. Marks found, among other things, that Spielberg could lift or carry up to ten pounds only occasionally, would need unscheduled breaks from work every one to two hours, and could only sit, stand, or walk during four hours of an eight-hour work day.  Dr. Bundschuh's opinions were similar, and she stated that Spielberg could only work four hours out of an eight-hour day.

The ALJ explained that he gave little weight to Dr. Marks's opinions because he had only treated Spielberg from March through May of 2009, his notes had few objective findings, his statement of medical impairments in the form included the phrase "w/in normal limits," he failed to indicate whether her impairments would last twelve months or more, his findings about Spielberg's limitations in walking appeared to be inconsistent, and Spielberg did not need a cane to walk.  The ALJ also noted Dr. Marks's findings pertaining to a lack of "synovitis" and a good range of motion.

As Spielberg points out, the ALJ mistook some of Dr. Marks's records for hospital records, raising a question about the care and attention the ALJ gave to reviewing the record.  In addition, the ALJ ignored Dr. Marks's positive finding of approximately twelve of the eighteen points used to diagnose fibromyalgia. Further, Dr. Marks's note in the assessment form pertaining to

17

bilateral pain in Spielberg's hands, wrists, and ankles, which includes the phrase "w/in normal limits," documents pain on both sides of the body and above and below the waist.

The First Circuit has explained that a lack of objective medical findings to support a fibromyalgia diagnosis is typical and that patients with fibromyalgia may have normal test results. Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009). The court noted that "[t]he American College of Rheumatology nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites." Id. (internal quotation marks omitted). Therefore, the ALJ's reasons for discounting Dr. Marks's opinion demonstrate his lack of understanding of fibromyalgia and highlight the rule that an ALJ is not qualified to interpret raw medical data to determine Spielberg's functional capacity. Nguyen, 172 F.3d at 35.

The ALJ gave little weight to Dr. Bundschuh's opinion because in an office note for preoperative evaluation, Dr. Bundschuh wrote: "The patient's functional capacity is hard to determine as she is limited due to her fibromyalgia. However, given what she does do, which is walking and taking care of her own ADLs, there seems to be no compromise." Admin. Rec. at 285. The ALJ interpreted Dr. Bundschuh's note to mean that Spielberg's

18

physical abilities were not compromised by fibromyalgia, which would be inconsistent with the first part of the note.  The note is ambiguous and cannot carry the weight the ALJ ascribes to it.

In sum, the ALJ improperly relied on Dr. Jaffe's opinion and erroneously rejected the opinions of Dr. Marks and Dr. Bundschuh.

**C.   Result**

In response to the hypothetical question which incorporated Dr. Jaffe's opinion, the vocational expert found many jobs that Spielberg could do.  In contrast, when asked a hypothetical question based on Dr. Marks's and Dr. Bundschuh's assessments, the vocational expert responded that there were no jobs she could do with those limitations.  Because the ALJ erred in relying on Dr. Jaffe's opinion and the result prejudiced Spielberg's claim, the case must be remanded for further proceedings.

## IV.   CONCLUSION

For the foregoing reasons, I grant Spielberg's motion to reverse (Doc. No. 10), deny the Commissioner's motion to affirm (Doc. No. 13), and pursuant to sentence four of 42 U.S.C. § 405(g), remand this case to the Social Security Administration. The clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

October 18, 2011

cc: Jeffrey A. Schapira, Esq.
Robert Rabuck, Esq.